May it please the court, Cynthia Kagiwara on behalf of defendant appellant Elias Jauregui. This case is before the court following Mr. Jauregui's conviction for drug conspiracy. And the main issue here on appeal comes from Mr. Jauregui's attempts to enter a guilty plea without admitting to the allegations of drug quantity and type. This court in United States v. Thomas has held that drug quantity and type are not elements of the offense. And in that particular case, they don't have to be admitted in order for a guilty plea to be accepted. In this case, that's what Mr. Jauregui tried to do. He tried to admit his guilt to a conspiracy but reserve the right to challenge the drug quantity and type. Are you really suggesting that U.S. v. Thomas says that every district court judge has to take a plea of anything that the defendant wants to plead to? No, Your Honor, but I am suggesting... In fact, doesn't U.S. v. Thomas say courts have discretion whether to take a plea? The way I understood U.S. v. Thomas was that the defendant has to admit to the elements of the offense. Well, and the court has the discretion whether to take a plea or not. That's correct, Your Honor. And in those situations where the court now has in front of him all these cases that he has to deal with, Booker, just name them on down, and he knows that one has to have an admitted drug type and a quantity in a particular case in order to know what the sentence is going to be based on all this precedent. And he says, why should I go through this not to get there? If you want to come before me, you tell me what you're going to admit to. If you're not going to admit to, go to trial. And that's the discretion that the court has under Thomas. Well, if that's true, then it is essentially turning it into an element of the offense. That's essentially saying that in order for a defendant to enter a guilty plea, they're going to have to. I didn't mean to interrupt you. They're going to have to admit to drug quantity and type. No. It's a discretion. The district court might have said that's fine. But it didn't. Well, it's hard to see, based on what Smith is saying, when a district court would ever say it's not fine then. Because when, you know, then why would they leave that open? Why wouldn't they try to get the defendant to commit to quantity and type and foreclose any kind of challenges later on? If that's the case, then it is essentially an element of the offense. And other circuits have so held that it is an element of the offense. But this. We haven't. Yes, exactly. As I understand it, I saw this just, you know, federal rule 11, criminal rule 11. Yes. A2 is conditional plea. Yes. Right. When he gave notice to the district court that he wanted to enter a plea, he said I want to enter a plea pursuant to 11A2, a conditional plea. Yes. And he had a number of conditions. Not only that he didn't want to admit the weight of the drugs. He had other conditions he wanted to preserve. And when you want to do a conditional plea, it is truly discretionary. And our case law is fairly strong. We even have a recent case called Gallagher v. United States District Court. It was issued November 13th by Judge McKeown of our court. And she makes it very clear there that when there's a conditional plea, the district court's discretion is just about unbridled. Yes, Your Honor. And that's basically what happened here. Well, and just to point out too, Mr. Hargy was proceeding pro se. He did not understand a lot of the things about what is a conditional plea and what was meant by that. It's very clear from the long colloquy he had with the court that what he was concerned about was the drug type and quantity. And he was trying to find some way in order to enter his plea to have some kind of hearing on that. I think it's also apparent from the colloquy he had with the district court afterwards, he was having difficulty with the drug quantity and type. And, you know, that was his whole thing is he just wanted some kind of hearing. Maybe if the district court thought that, you know, by admitting the essential elements of the basic charge, as opposed to having a trial on everything, might resolve in a more efficient trial just focusing on the quantity. Maybe the district court judge might want to have taken a plea, as your client proposed. Right. But he didn't have to. Right. Well, and I think, you know, the district court was also very clear that the court was concerned that if it took this kind of plea, what would the ramifications be. And, I mean, I think the flip side is kind of the district court almost felt like it couldn't take this kind of plea because it was opening things up. Because it would have to have a jury trial on it. Right. And there wasn't much point in that. But the other thing is the district court could have obtained a waiver on the jury trial and just had an evidentiary hearing. And, actually, this is kind of what happened afterwards. Anyhow, there was a hearing on the government's side, but not on Mr. Hargis' side. And that was the third issue that was brought up in the opening brief, was Mr. Hargis at least wanted to try to put on some witnesses and evidence, try to obtain funds to do that, and was kind of assured by the district court, you know, we'll come back to me, we'll revisit this again. But then when it finally came down to it, the district court said, no, you should have brought your witnesses here at sentencing. And I think that's also problematic because, essentially, the district court did hear evidence from the government on drug quantity and on managing role. Mr. Hargis wasn't allowed to put on any kind of evidence. But when we look at that, my worry is he got the lowest sentence he could get, didn't he? That's correct, under the guilty plea that he entered. But what the court could have done then is just said, I'm not going to look at managing role, I'm not going to hear any evidence on this, because no matter what, he's going to get 240 months. But the district court didn't do that in this case. What the district court did is allowed the government to put on evidence about and did actually find that he was a manager and raised his offense level by three levels under that finding. Like you pointed out, it didn't make any ultimate change to the 241 sentence. But then the district court should have said, I'm not going to look into this. Well, but my worry is that we've got a situation here where the district court is trying to put together to avoid procedural error what the exact amount of the sentence ought to be. And then going to the 3553A factors, the district court says we can put all that together all we want. You're going to get the lowest sentence I could possibly give. And that he's allowed to do under 3553A. My main point, though, is then why have a hearing at all on drug quantity and managing role if you're going to impose the lowest possible sentence of 240 months? To get to the right level. The district court has to conduct. It has to determine what the guideline range is. Well, and then if he was going to do that, though, my point is that Mr. Hargi should have been allowed to put on his witnesses, as he tried to do. He tried on several occasions to request funds to get witnesses. And the district court kind of suggested that maybe, you know, come back to me, come back to me, maybe I will, maybe I will. But then that sentencing said, no, you should have brought your witnesses earlier. So I think that's where, you know, procedurally it's a problem for Mr. Hargi. Yeah, he would have been better off if he had represented in the trial. Well, yeah. I was his advisory counsel, but that was it. I was just advisory. But, Pam, it wouldn't have done one bit of good for you to have put on all that evidence, to have gone through anything you had to do, because the apprendi error was neutralized given the sentence. Duly hamper was neutralized because of the sentence. The do not prejudice was neutralized because of the sentence. When we get to the bottom line, the sentence given makes all of this go away because it's the lowest the court could give. Right, right. But as you pointed out, you know, the court still had to go through the whole guidelines determination and everything. And so Mr. Hargi should have been allowed to put on his case. If there are no further questions, I'd like to reserve a rebuttal. Okay. Thank you. Good morning. Chris Thomas, assistant U.S. attorney for the District of Hawaii. I think it's apparent by the court's questions that the court realizes the legal issues are not contested. And, in fact, the questions asked by the justices all centered on factual issues. And just to give further context to the court, the guilty plea by the appellant was entered in January of 2007. Now, as early as October, three hearings had occurred from October to January 2007 in which the defendant had the opportunity to discuss with the court what his rights were, what he was entitled to, what would be involved in a guilty plea. And, in fact, on October 19, 2006, that was a hearing in which the defendant wanted to proceed pro se. And at that hearing, he already admitted or stated on the record that it was his intent from that point, October of 2006, to enter a plea. So from those hearings on, it was the court educating the defendant what his rights were. That occurred on December 7, 2006. Again, the purpose of that hearing was to determine if the defendant was, in fact, going to go forward with entering his plea. And, in fact, some of the... And he eventually said, yes, I want to enter a plea. That's correct. He said, I want to enter a plea, and here's what I want to do. I want to plead to the basic charge. I don't want to admit to the quantity. I want to have a trial on the quantity. The district court judge said, no. This is your honor. And they say, well, the district court judge, I don't know what they're saying, I guess, abused his discretion or that he said he didn't... Mr. Thomas. Yes, your honor. On 12-20, December 20, 2006, at that hearing, the court talked about the options that were available to Mr. Haragi. And the court gave Mr. Haragi the inclination very much like how Justice Smith raised. We were at the point where we were reacting to what the status of the law was. We had already gone through some trials in which there are hearings purely to determine the quantity of the drug. Now, in this particular case, I think it's very obvious. That was the entire issue in this case, how much drugs, what the quantity and the type of drug was. Now, in December 2006, the court told Mr. Haragi, this is my inclination. He said on page 13, which is transcript 31 in the supplemental excerpt of records, he said, I don't believe it's in the interest of justice in a case such as this and judicial commoning to have a plea and then in any event have a plea and then a jury trial as to drug weight or quantity. I suspect, Mr. Thomas, the amount of time you would spend at a drug weight trial would not be substantially less than the entire trial in any event. And my answer to the court was, that's correct, Your Honor. Yeah, you have to tell the whole story. Exactly. So that's why the court gave me a plea discretion. I guess there are maybe instances where he could have a more efficient trial if he got rid of some issues. I agree with the court. And the reason why he didn't. But here the judge said no, and I don't know what the problem is. Those instances, as an example, would be where the drugs were less than, in methamphetamine cases, less than 5 grams. Because obviously there's no threshold that has to be proved before statutory mandatory minimums become in effect. So obviously it doesn't matter what the quantity of the drug is in that type of case. Or there may be situations which have occurred where the type of issues that are tried at a sentencing or, excuse me, a jury trial and sentencing are very limited in the conditional plea pursuant to Rule 11A2. That's not the case in here. The whole trial revolved around the quantity of the drugs and would be very inefficient, in effect, to have that trial which would have been a jury trial. And that's how the court fashioned over a period of three hearings prior to the guilty plea hearing the option of pleading guilty, and I'm allowing you to do that if you admit to the quantity and type, which he did on January 4, 2007. And then he got the sentence. Correct, Your Honor. Minimum sentence. 240 months, which was the absolute minimum. Now, there were some arguments about the court denying Mr. Haudegui his right to have witnesses present. And, again, this was a process. This didn't happen in a vacuum on July 20th, the date of the sentencing. The court saw this from the record that Mr. Haudegui was objecting to everything. In fact, he filed a motion to withdraw his guilty plea. And during the course of that hearing, and even we also had status conferences. It started on April 18, 2007. And on that date, which is supplemental excerpt of record, page 12, Mr. Haudegui, at that time, made his request that he wanted investigator funds. Because he had read the pre-sentence investigation report, and he saw that there was a witness, and it was true, it was in the pre-sentence investigation report, that the witness had made a statement. And that witness's name was Jennifer North, and that's set forth on 112 of the record. But later, on July 10, in a motion for sanctions that the defendant filed, it was clear that the name that was submitted in that pre-sentence investigation report was in error by the probation officer. So he was claiming that I had not turned over any statements to him. And I was telling the court, yes, I did, because this case was actually set for trial previously. I turned over everything that the government has. And the government was validated on July 10, 2007, because he did have everything. Now, also, what occurred on that hearing on April 18, 2007, is that Mr. Haudegui identified what he was looking for. First of all, I mentioned earlier, he wanted an investigator to talk to a witness that we eventually found out did not give a statement. But he also wanted to have the investigator look into matters pertaining to his managerial role. On page 112, the court inquires and clarifies with Mr. Haudegui why he wanted to spend money. And this is what the court was able to determine. He said, and there may be no agreement, I don't know, on who paid for the plane tickets, that's what he wanted to find out, and all that sort of stuff. And you can take a look at that as well, referring to me, Mr. Thomas. And if it really isn't that relevant to the issues, then it may be moot in any event. I don't know at this point. So this is back in April. Before we ever get to the sentencing, Mr. Haudegui is given notice that these issues might be moot. And then we turn again to the hearing held on July 10, 2007. Pages 123 and 124 on the supplemental excerpt of records. Mr. Haudegui, these are his words. He says, in my statement, saying that Mr. Diaz said he gave me the money and that I purchased tickets, airline tickets and all this, and that in fact is definitely not the case. So again, what he's doing here is challenging the managerial role. And the court's response to that was, I'll give you that opportunity if you believe something has come up during that hearing, but let's wait and see. Again, he's been given notice. The court says, because it may be that I find that it's irrelevant. So Mr. Haudegui has a second time being told by the court, you know what, you might not get these witnesses. Is that after the pre-sentence report was done? That's correct. That's subsequent to the pre-sentence investigation report. Now, in the appellant's brief, the way that it's presented, and it can read this way, a court can get a perspective that the way in which it was worded in the brief, that the district court's determination was arbitrary and final. Well, based on the facts, I've already represented to the justices that Mr. Haudegui had prior notice. Now, in the brief, after the court says, today is sentencing, Mr. Haudegui, that was the day to do it, it appears that the district court was being somewhat unreasonable. But the brief doesn't say what happened after. The district court took the time to counsel Mr. Haudegui, and this is why. Because he explained, as Justice Smith pointed out, that the minimum is $240,000. I can't do anything more. After the hearing of two witnesses, it could have been much more, because much more people were involved, and the questioning of the witnesses was very short in one morning. And the defendant had an opportunity to cross-examine. The court said, I don't intend to give more time. I think we understand the decision. Can I just ask you a little question? Here's a question. Can you attempt with a pro se defendant like this? The question is, did you attempt plea negotiations with him? How does that work when there's an advisory counsel? Your Honor, this question would be off the record. There's nothing in the record that I can point to to answer your question. I know. We sometimes ask questions. Sure. Is your question pertaining to this particular case? Yes. I'm just curious. Yes, Your Honor. In this case, prior to the appellant being pro se, he was assigned two attorneys. He went through two attorneys prior to this. Okay. That's all I want to know. Thank you. Thank you, Your Honor. Just to address your last point, Your Honor, also off the record, because there's nothing on the record. But Mr. Hargy was incarcerated during this whole time. He was pro se. He did try to contact Mr. Thomas to negotiate with him, but because of him being incarcerated, it was very difficult. Can't really make phone calls out of the prison. I believe you wrote him a couple of letters, but it was very difficult. Okay. And going back to the sentencing issue, I don't think that it's proper to say that this was irrelevant, because the district court did indeed find that Mr. Hargy was a manager, based on evidence that was presented by the government. And he could have just said, it's irrelevant. I'm not going to make a finding on this issue, because you're going to get the 240 months anyhow. That's the mandatory minimum sentence. But he didn't do that. And so I don't think it's proper to say that it was irrelevant. He did try to come in and bring his evidence. He wanted to bring in some kind of evidence from the travel agency in California, and that's why he was trying to get funds to get witnesses and records. And I have nothing further unless there are other questions. Any further questions? Thank you. The case just argued is submitted for decision. Before hearing the last case, which has a video hookup, the court will take a ten-minute recess.
judges: Schroeder, Paez, Smith